Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5853 | **DATE** | 12/14/2001 |
| **CASE TITLE** | Brian Childs vs. Earle M. Jorgensen Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Child's Motion to Strike is denied, and Earle M. Jorgensen Company's Motion for Summary Judgment is granted. All claims are dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 17 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 25 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | 01 DEC 14 PM 4: 17 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

FILED
DEC 14 2001
Judge Harry D. Leinenweber
U. S. District Court

DOCKETED
DEC 17 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN CHILDS,<br><br>    Plaintiff,<br><br>v.<br><br>EARLE M. JORGENSEN COMPANY,<br><br>    Defendant. | Case No. 00 C 5853<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Brian Childs ("Childs"), who is black, filed this suit against Earle M. Jorgensen Company ("EMJ"), his employer, alleging race discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981. Before the Court is EMJ's Motion for Summary Judgment.

### BACKGROUND

EMJ, a company that conditions bulk metals to customer specifications, hired Childs in September 1996 for an entry-level position at its Schaumburg warehouse. All of EMJ's warehouse employees are represented by Local 714 of the International Brotherhood of Teamsters. The collective bargaining agreements (the "CBA's") governing the period at issue here set employees' hourly wage rates based upon an individual's job classification and length of service at EMJ. Job classifications range from beginning employees to "Leadpersons."



As set forward in the CBA's, a regular employee is paid various fixed percentages of "full scale pay" during his first three years. After 120 days of employment, the employee receives 70% of full scale pay for his job classification. Starting on the first anniversary of employment, an employee receives 80%; on the second anniversary, 90%; and upon his third employment anniversary, the employee must be paid 100% of full scale pay for his job classification. Although not authorized by or discussed in the CBA's, EMJ sometimes rewards superior employees by increasing their wages to 100% of full scale pay before their third employment anniversary date.

In January 1997, EMJ promoted Childs to Leadperson, which his pay rate reflected. Eight months later, EMJ eliminated several Leadperson positions, including the one held by Childs. EMJ paid Childs as a Leadperson until September 1997. It then lowered his wage rate to 80% of full scale pay for his position, in accordance with the CBA. Throughout his first three years, Childs received each of the CBA-mandated pay increases, and he began earning 100% of full scale pay as required upon his third employment anniversary.

Childs believes that Tom Cameron, his supervisor, discriminates against black employees, and more specifically, Childs believes that Cameron discriminated against him by disciplining him unnecessarily. On October 30, 1998, Cameron

issued Childs a three-day suspension for chronic absenteeism. Childs believed the suspension was racially motivated and asked Cameron if he was being singled out because of his race. Cameron denied that the suspension was racially motivated and decided to waive the suspension, but the disciplinary notice remained in Childs' file. On November 4, 1998, Cameron received a notice from EMJ's Human Resources Department stating that Childs should be suspended for accruing more than 40 hours of absences in a 12-month period. Cameron waived that suspension as well. In May 1999, Cameron issued Childs a verbal warning for carelessness after Childs rammed his forklift into storage racks containing steel.

Childs also believes discrimination played a role when EMJ fired him in September 1999. Under the CBA then in effect, EMJ had the right to require employees to work mandatory overtime if no employees volunteered for the job. When mandating overtime, the CBA provided that the company would choose employees with the least seniority. Under EMJ's Company Rules and Regulations, an employee could be immediately fired for refusing to obey a supervisor's reasonable order.

On September 30, 1999, Jay Karlin, Assistant Manager of Plant Operations, told Childs that he had to work mandatory overtime that day. Childs told Karlin that he could not stay because he had plans. Karlin told Childs to speak to Cameron about it, and he spoke with Cameron for approximately 10 to 15 minutes. Cameron

told Childs that he was required to stay, but Childs told Cameron that he had something scheduled and could not work the overtime. Childs did not tell Cameron what his plans were. Cameron told Childs that he would be fired if he refused to stay for the overtime assignment. Childs responded, "You have to do what you have to do. I have something planned, and I can't back out now."

Following this initial meeting, a second meeting was held with Karlin, Cameron, Union Steward Frank Jones, and another supervisor. At the second meeting, Childs again refused to stay for the overtime, saying only that he had "something previously planned to do," and he was fired. Childs then filed a grievance with his union, and on October 6, 1999, EMJ reinstated Childs, reducing his termination to a three-day suspension without pay.

On October 1, 1999, between his termination and reinstatement, Childs filed a discrimination charge with the Equal Opportunity Employment Commission. He received a Notice of Right to Sue and filed this suit on September 22, 2000. Childs filed an amended complaint on April 4, 2001.

## SUMMARY JUDGMENT STANDARD

Summary judgment will be granted only proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c);

see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In evaluating EMJ's summary judgment motion, the court reviewed the record in the light most favorable to Childs, with all inferences drawn in his favor as required by this familiar standard. *See Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 783 (7th Cir. 2001).

## DISCUSSION

### The Parties' Briefs

EMJ seeks summary judgment with respect to all of Childs' claims, but there appears to be some confusion as to what those claims are. EMJ correctly subjects the Title VII and § 1981 claims to the same analysis, but it sees five basic claims in Childs' amended complaint: a retaliation claim and four race discrimination claims. The four race discrimination claims, according to EMJ, include: (1) failing to pay Childs the same as other similarly situated white employees; (2) issuing him various disciplinary notices because of his race; (3) failing to promote him to Leadperson because of his race; and (4) terminating him for refusing an overtime assignment.

Childs' response only addresses his wage discrimination, discriminatory termination, and retaliation claims. EMJ replies that Childs' neglect of the failure to promote and discriminatory discipline claims results in a waiver of those claims. It is unclear whether a party can waive a claim presented in its complaint by failing to argue the matter in response to a motion

for summary judgment, *compare Nabozny v. Podlesny*, 92 F.3d 446, 457 n. 9 (7th Cir. 1996)(non-moving party's failure to raise an issue in response to summary judgment motion does not result in waiver), *with Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 810 (7th Cir. 2001)(non-moving party's failure to raise issue in response results in waiver), but more fundamentally it appears Childs failed to respond to EMJ's arguments because Childs does not raise those claims.

A review of the amended complaint and Childs' response reveals that Childs only has three basic claims: wage discrimination, discriminatory discharge, and retaliation. Specifically, Childs claims that EMJ (1) failed to pay him the same as similarly situated white employees because of his race, (2) terminated him because of his race; and (3) disciplined him in retaliation for Childs' October 1998 accusation that Cameron was biased against him because of his race. Childs' response brief indicates that the retaliation claim is brought pursuant to § 1981, but his amended complaint clearly indicates that this claim is brought pursuant to Title VII. In sum, Childs brings all three claims pursuant to Title VII, and he also brings his wage discrimination and discriminatory discharge claims under the rubric of § 1981.

### Childs' Motion to Strike

Contemporaneous with his response, Childs filed a Motion to Strike ¶¶ 24, 26, 33, 36-39, 51, 59-62, and 65 of EMJ's Local

Rule 56.1 Statement of Facts. Most of these paragraphs assert various facts regarding other EMJ employees who are identified as either similarly or dissimilarly situated to Childs. Childs argues that the identified paragraphs should be stricken because they are taken from the affidavits of Elaine Trunkenbolz, EMJ Human Resource Administrator, and Cameron, both of whom allegedly relied on documents when making their affidavits that were requested by Childs but not produced during discovery. Documents purportedly relied upon by the affiants are, however, attached to the affidavits.

Childs does not advance a reason beyond this general basis for striking these paragraphs. Nevertheless, the court has carefully reviewed each paragraph at issue and the underlying record. It is clear that there is no basis for striking ¶ 62, as it is taken directly from the plaintiff's deposition testimony. Paragraphs 51, 59, and 65 refer to disciplinary records that, according to the very documents submitted by Childs, EMJ made available for Childs' inspection. Childs did not move to compel production of these records, and there is no suggestion beyond Childs' general allegation that EMJ did not permit Childs to view them. The court therefore finds no basis for striking them. Similarly, the court finds that ¶ 61 is based on the disciplinary records opened to inspection and on Cameron's personal knowledge; therefore, it will remain. Paragraphs 26 and 60 clearly rest upon Trunkenbolz's

personal knowledge of general corporate practices, and ¶¶ 33 and 36-39 are immaterial.

Finally, ¶ 24 lists several individuals who received 100% of full scale pay prior to their third employment anniversary, citing their superior performance and clean disciplinary history. Although the portion of Trunkenbolz's affidavit cited in ¶ 24 arguably rests in part on documents that do not appear to have been produced, the court finds that even if Trunkenbolz's affidavit is ignored, the information contained in ¶ 24 is plausibly within the range of Cameron's personal knowledge. Accordingly, Childs' motion to strike is denied in its entirety. Although Childs requests additional time to respond if the motion to strike is denied, the court sees no reason to delay and proceeds with the motion.

### Childs' Claims

As previously indicated, Childs presents claims under Title VII for wage discrimination, discriminatory discharge, and retaliation. He also brings claims of wage discrimination and discriminatory discharge under Section 1981. Under Title VII of the Civil Rights Act of 1964 it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981

prohibits discrimination on grounds of race in the making and enforcing of contracts. See 42 U.S.C. § 1981(a). *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir. 1999). Nevertheless, the same standards governing liability under Title VII apply to § 1981. *Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). Because Childs' wage discrimination and discriminatory discharge claims share the same factual predicates, the following analysis applies to both.

### Discriminatory Discharge

A plaintiff may offer either direct proof of discriminatory intent or indirect proof of disparate treatment through the burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1000 (7th Cir. 2000). Childs proceeds under *McDonnell Douglas* with respect to his retaliation and wage discrimination claims, but he contends to have direct evidence of discriminatory intent motivating his discharge.

Direct evidence, "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569 (7th Cir. 1989). Such evidence "in and of itself suggests that the person or persons with the power to hire, fire, promote and demote the plaintiff were animated by an illegal employment criterion." *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir.

1997). Direct evidence is rarely found, as it "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark*, 219 F.3d 612, 616 (7th Cir. 2000).

This is not the rare case. Childs' direct evidence of discriminatory intent consists of Childs' statement that co-worker James Maggette overheard Cameron declare "we have to get these black guys out of here." According to Childs, this incident occurred during the summer of either 1998 or 1999. This statement is clearly inadmissible hearsay within hearsay. Inadmissible hearsay is unusable in summary judgment proceedings without a showing, not attempted here, that it could readily be replaced at trial by admissible evidence. *Minor v. Ivy Tech State College*, 174 F.3d 855, 856-7 (7th Cir. 1999). *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994)(to defeat motion for summary judgment, nonmoving party must produce "evidence of evidentiary quality,", *i.e.*, admissible evidence). Childs presents no other purportedly direct evidence of discrimination.

Under a *McDonnell Douglas* analysis, a plaintiff can establish a prima facie case of discriminatory discharge by showing that he is a member of a protected class, that he was discharged, despite having performed his job satisfactorily, and that other similarly-situated employees outside his race were treated more favorably. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1171-72

(7th Cir. 1997). Once a plaintiff has established a prima facie case, the burden shifts to the defendant to offer a non-discriminatory reason for its employment decision. *Cowan v. Glenbrook Sec. Serv., Inc.*, 123 F.3d 438, 445 (7th Cir. 1997). If the employer satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual, *i.e.*, that race more likely motivated the employer. *Id.*

Childs fails to present a prima facie case. It is undisputed that EMJ can require employees to work mandatory overtime. Further, it is undisputed that it can fire employees for refusing a supervisor's order, such as refusing to work mandatory overtime. Childs refused to work the mandatory overtime on the occasion in question. He was warned, twice, that his refusal would result in termination, yet he continued to refuse. Clearly, he was not meeting his EMJ's legitimate expectations. This, by itself, defeats Childs' discriminatory discharge claims for when a plaintiff fails to establish that he was meeting his employer's bona fide expectations, there is no need to proceed with the remaining steps of the *McDonnell Douglas* framework. *Contreras v. Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001).

### Wage Discrimination

Although the Supreme Court and the Seventh Circuit have not definitively established the elements necessary to prove a prima

facie case of wage discrimination under Title VII, the Seventh Circuit has employed the burden-shifting paradigm in such cases. *See Johnson v. University of Wis.-Eau Claire*, 70 F.3d 469, 478 (7th Cir. 1995). A prima facie case of wage discrimination requires a plaintiff to produce evidence that he or she was paid less than a similarly situated person of a different race. *Id.* (pertaining to sex discrimination). In determining whether employees are similarly situated, a court must look at all the relevant factors. Childs need not show complete identity in comparing himself to those better treated employees, but he must show substantial similarity. *Radue*, 219 F.3d at 617. *See also Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) ("plaintiff must show that the 'comparables' are similarly situated in all respects")(internal quotation omitted). If Childs establishes his prima facie case, the burden then shifts to EMJ "to articulate some legitimate, nondiscriminatory reason" for the challenged action. *Johnson*, 70 F.3d at 478.

Childs fails to present a prima facie case. EMJ admits that it pays some employees 100% of full scale pay before their third employment anniversary as a reward for superior performance. Childs, however, fails to set forth any evidence that he is similarly situated to such employees, as he must in order to survive summary judgment.

Even if Childs could establish a prima facie case, he cannot show that EMJ's stated reason for the pay disparity is pretext. Childs disputes EMJ's stated reason by pointing out that the CBA's do not authorize it to depart from the established pay schedule. EMJ's stated reason -- that it wants to reward superior employees by increasing their pay ahead of schedule -- cannot be considered a lie merely because such action is not contemplated in the CBA's. Surely no union officials would contend that such action is a breach of the agreements. Further, EMJ identifies six individuals it has so rewarded. Two, Terry Dean and Roosevelt Grayson, are African American, and one is Hispanic. Given this uncontradicted evidence, no reasonable jury could find that EMJ's stated reason for increasing some employees' wages ahead of schedule is unworthy of belief.

**Retaliation**

Childs claims that after he accused Cameron on October 30, 1998, of singling him out for discipline because of his race, Cameron retaliated by disciplining him further in November 1998 and May 1999 for minor infractions that would normally be overlooked. To state a prima facie case of retaliation under Title VII, a plaintiff must present sufficient evidence that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. *Lalvani v. Cook Co.*,

*Ill.*, 269 F.3d 785, 790 (7th Cir. 2001). Childs cannot meet (2) or (3).

Childs did not suffer an adverse employment action in either case. "[U]nfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001). *See also Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118-19 (7th Cir. 2001) (ruling that verbal warnings without a materially adverse employment action do not rise to the level of a materially adverse employment action); *Sweeney v. West*, 149 F.3d 550, 556-57 (7th Cir. 1998)(holding that an employee did not suffer from an adverse employment action when she was unfairly reprimanded and warned that any further complaints about her conduct would result in disciplinary action). The proposed November 1998 suspension was waived by Cameron, and Childs received only a verbal warning for the May 1999 incident. Childs suffered no ill-effects as a result of these two incidents. Therefore, neither incident rises to the level of an adverse employment action.

Nor can Childs demonstrate a causal connection between his accusation and the alleged adverse action. If the proposed November suspension is excluded on the basis that Cameron had nothing to do with it, the next disciplinary action occurred nearly seven months after October 30, 1998. Although plaintiffs can

establish a causal link between the protected activity and the alleged retaliatory conduct by showing that there was a suspiciously short period of time between the protected activity and the adverse employment action, *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1039 (7th Cir. 1998), as the length of time between the two events increases, the validity of a causal inference decreases. *Filipovic v. K & R Exp. Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999)(four months negates causal link). *See also Parkins*, 163 F.3d at 1039 (three months insufficient to establish causal link). As the cited cases indicate, the intervening seven months destroys any causal inference that Childs might seek to make.

## CONCLUSION

For the foregoing reasons, Childs' Motion to Strike is denied, and EMJ's Motion for Summary Judgment is granted. All claims are dismissed.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: December 14, 2001